**Fred BOUSHEHRY, Appellant (Defendant),**

v.

**Jerry ISHAK, Appellee (Plaintiff).**

**No. 49A02–8808CV301.**

Court of Appeals of Indiana, Second District.

Feb. 26, 1990.

Richard J. Dick, Mitchell Hurst Jacobs & Dick, Indianapolis, for appellant.

Frank E. Spencer, F. Robert Lively, Lively & Bogard, Indianapolis, for appellee.

BUCHANAN, Judge.

## CASE SUMMARY

Defendant-appellant-cross appellee Fred Boushehry (Boushehry) appeals from a judgment for plaintiff-appellee-cross appellant Jerry Ishak (Ishak) claiming the trial court erred when it gave Ishak an award in *quantum meruit;* Ishak also appeals claiming the trial court erred when it failed to impose a constructive trust on property acquired by Boushehry after the dissolution of their partnership.

We reverse.

## FACTS

The facts most favorable to the judgment reveal that Ishak and Boushehry became acquainted in 1985, and Boushehry, having experience in the construction of homes and development of subdivisions, built Ishak's home. The two became friends and in late 1985 and early 1986 formed a partnership for the purpose of purchasing real estate for speculation or development.

They became aware of a parcel of land being offered for sale by Thomas Clouse (Clouse) and jointly approached Clouse to purchase the real estate. A joint proposition for the purchase of the property was signed by Boushehry and Ishak and Clouse on January 20, 1986, which was amended on March 12, 1986, and signed by Boushehry, Ishak and Clouse and his wife. The purchase price was $92,000 and $500 in earnest money was paid by Ishak with a personal check.

The next day, March 13, Ishak and Boushehry opened a joint checking account in the name of Buck Creek Woods with Boushehry's address as the business address. Each party contributed $1,500, and Ishak was reimbursed for the earnest money. The proposition with Clouse was amended again on March 27 to extend the time limit for closing the transaction, and after other extensions a closing date of June 25, 1986 was set. Boushehry and Ishak intended to develop the land as a residential subdivision.

A dispute among Ishak, Boushehry and Clouse arose as to what zoning classification should be sought for various stages of the project, with Ishak and Clouse favoring one classification and Boushehry favoring another. Other problems between Boushehry and Ishak arose concerning various business activities conducted by the partnership. Boushehry believed Ishak's inexperience in subdivision development caused the partnership to waste time and effort.

On May 20, 1986, Boushehry sent Ishak a letter which indicated that Boushehry no longer wished to develop the property with Ishak and offered Ishak the option of completing the purchase and then selling the property to a third person, or defaulting on the deal.

Boushehry and Ishak met on June 8, 1986, and Boushehry told Ishak that he (Boushehry) wanted to be the dominant partner with sole decision making authority for the project and to accomplish this purpose the partnership should be reorganized into a corporation with Boushehry owning

51 percent of the shares. Ishak refused this suggestion.

The final approval for the zoning of the property had not been received by June 25, and the purchase of the property was not closed. Clouse sent Boushehry a letter, received on June 26, 1986, informing him the earnest money had been forfeited and the proposition had been cancelled. Upon receipt of the letter, Boushehry telephoned Ishak and told him to see if he (Ishak) could save the deal with Clouse.

The next day, June 27, Ishak, along with his real estate agent, went to Clouse's business to save the deal. Clouse was abrupt with Ishak and refused to see or discuss the matter with him. However, Clouse then telephoned Boushehry and told him that Ishak had attempted to purchase the property for himself and that Ishak was attempting to cut him (Boushehry) out of the transaction. Boushehry never informed Clouse that he told Ishak to save the deal. Clouse then offered the property to Boushehry on substantially the same terms as the property was offered to the partnership. The next day, June 28, Clouse and Boushehry signed the proposition for Boushehry's sole purchase of the property.

Boushehry continued to pursue the zoning petition begun by the partnership, and obtained final zoning approval in July of 1986. Boushehry developed the property, sold lots and built homes in both his name and the name of Buck Creek Woods.

Ishak filed suit, seeking to have the property held in a constructive trust for the partnership. After a trial to the court, the trial court issued its findings of facts and conclusions of law which determined that Ishak had not demonstrated Boushehry committed a fraud against him and that there was no evidence of collusion between Boushehry and Clouse, and therefore Ishak failed to show the property should be subject to a constructive trust. The trial court then determined that Boushehry, because he consummated the transaction with Clouse for himself, had been enriched by Ishak's time and effort, and the trial court awarded Ishak $20,000 in *quantum meruit*.

Ishak filed a motion to correct errors, alleging the trial court's findings were erroneous and it had erred when it failed to impose a constructive trust. The motion also pointed out an arithmetical error in the trial court's computation of the final judgment. The trial court granted Ishak's motion to correct error in part, correcting the arithmetical error in the judgment, increased Ishak's award to $40,000, and denied the other allegations of error. From this judgment both Ishak and Boushehry appeal.

## ISSUES

1. Whether the trial court erred when it gave Ishak an award in *quantum meruit*?
2. Whether the trial court erred when it failed to impose a constructive trust upon the property?

## DECISION

ISSUE ONE—Did the trial court err when it granted Ishak an award in *quantum meruit*?

PARTIES' CONTENTIONS—Boushehry claims that the trial court erred in granting Ishak a *quantum meruit* award because no evidence was introduced to determine the value of Ishak's services. Ishak responds that Boushehry has preserved no error for our consideration, and that there was sufficient evidence to support the court's award.

CONCLUSION—The trial court erred in granting Ishak an award in *quantum meruit*.

█ Ishak seeks to plow under Boushehry's attack on the impropriety of awarding *quantum meruit* by pointing to Boushehry's failure to file a motion to correct errors after the trial court's entry of judgment. However, this court has determined that a party who was prejudiced by the relief granted on his opponent's motion to correct errors does not need to file his own motion to preserve issues not raised in the opponent's motion. *Symon v. Burger* (1988), Ind.App., 528 N.E.2d 850; *Groves v.*

*First Nat. Bank of Valparaiso* (1988), Ind. App., 518 N.E.2d 819, *trans. denied.* Ind. Rules of Procedure, Trial Rule 59(F) (1988).

As Ishak's award was doubled by the trial court's partial grant of Ishak's motion to correct error, Boushehry was prejudiced by that relief. Thus there was no need to file a motion to correct error and the original judgment may be assaulted on grounds not raised in Ishak's motion. *Groves, supra.*

Turning to the merits of the alleged error, that *quantum meruit* was improperly awarded by the trial court, we must conclude reversible error was committed. If there is a contract controlling the rights of the parties, there can be no recovery on the theory of *quantum meruit. Engelbrecht v. Property Developers, Inc.* (1973), 156 Ind.App. 354, 296 N.E.2d 798, *trans. denied.*

A partnership can commence only by the voluntary contract of the parties, and a contract is essential to the formation of a partnership. *J.M. Schultz Seed Co. v. Robertson* (1983), Ind.App., 451 N.E.2d 62; *Vohland v. Sweet* (1982), Ind.App., 433 N.E.2d 860.

The trial court determined that the parties had formed a partnership at will to enter into any mutually acceptable real estate transaction that became available. *Record* at 124. Ind. Code 23–4–1–18 (1988), in pertinent part, provides:

"The rights and duties of the partners in relation to the partnership shall be determined, subject to any agreement between them, by the following rules:

.    .    .    .    .

(f) *No partner is entitled to remuneration for acting in the partnership business,* except that a surviving partner is entitled to reasonable compensation for his services in winding up the partnership affairs." (Emphasis supplied).

Thus it has been held that a partner is not entitled to compensation for his services rendered to the partnership unless there is an agreement to the contrary. *Kist v. Coughlin* (1944), 222 Ind. 639, 57 N.E.2d 199, *modified* at 222 Ind. 639, 57 N.E.2d 586; *McBride v. Stradley* (1885), 103 Ind. 465, 2 N.E. 358; *see generally* 59A Am. Jur.2d *Partnership* § 483 (1987).

■ As a partner's rights are determined by the partnership agreement and by statute, Ishak was not entitled to recover the value of his services on the basis of *quantum meruit.* His services were rendered to the partnership in return for a share of the partnership's profit and he is entitled to no other compensation, absent an agreement to the contrary. *See Jonathan Woodner Co. v. Laufer* (1987), D.C. App., 531 A.2d 280; *Sharp v. Laubersheimer* (1984), Minn., 347 N.W.2d 268; 59A Am.Jur.2d *Partnership* § 491 (1987).

ISSUE TWO—Did the trial court err when it failed to impose a constructive trust upon the property?

PARTIES' CONTENTIONS—Ishak argues that Boushehry breached his fiduciary duty to the partnership when he consummated the transaction begun by the partnership for himself. Boushehry claims that because the time limitation on the proposition with Clouse had expired, the partnership did not have the opportunity to complete the transaction and that Boushehry's fiduciary duty extended only to winding up the partnership's bank account.

CONCLUSION—The trial court erred by failing to consider whether Boushehry breached his fiduciary duty to Ishak and the partnership.

Our initial inquiry is to determine if Boushehry had a fiduciary duty to Ishak and if so, at what point did it come into play. The trial court's judgment ignored this subject, finding only that the evidence was not sufficient to show that the property should be subject to a constructive trust because, at the time of the dissolution, there was only a contingent interest in the property. The trial court also found that there was no evidence of collusion, fraud, or conspiracy between Clouse and Boushehry, and that each acted independently. *Record* at 131.

As to the need for fraud, collusion, or conspiracy, this court in *Given v. Cappas* (1985), Ind.App., 486 N.E.2d 583, *trans.*

*denied*, concluded that the breach of the fiduciary relationship between partners could require the imposition of a constructive trust. *Given, supra.*

So we examine the Uniform Partnership Act, adopted in Indiana at IC 23–4–1–1 through 23–4–3–8, for guidance as to what happens when a partnership ceases to do business. IC 23–4–1–21 provides, in pertinent part:

"Every partner must account to the partnership for any benefit, and *hold as trustee* for it *any profits derived* by him without the consent of the other partners *from any transaction connected with the* formation, *conduct*, or *liquidation* of the partnership, or from any use by him of its property." (Emphasis supplied).

The nature of a partner's fiduciary duty was best described by no less of an authority than Justice (then Judge) Cardozo in *Meinhard v. Salmon* (1928), 249 N.Y. 458, 164 N.E. 545, when he declared:

"Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions. [Citations omitted]. Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd."

*Id.* at 464, 164 N.E. at 546. The partner remains as a trustee when the partnership is dissolved and terminated.

The trial court determined that the partnership had "terminated" on June 8, after the meeting between Boushehry and Ishak in which Boushehry expressed he would not develop the property with Ishak unless he had final decision making authority. *Record* at 131. This determination is clearly erroneous as termination does not occur until the business of the partnership is completed. IC 23–4–1–30 says: "On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed."

The June 8th meeting is more accurately characterized as the beginning of the dissolution of the partnership, which would continue until the affairs of the partnership were wound up and the partnership finally terminated. IC 23–4–1–29 explains: "The dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business."

■ We emphasize that the fiduciary relationship of the partners continues until final termination of the business of the partnership. IC 23–4–1–21 expressly places each partner in the role of a trustee as to matters connected with the liquidation of the partnership. Courts have consistently held that, with respect to partnership business pending at the time of dissolution, the fiduciary duties of the partners remain intact. *Leff v. Gunter* (1983), 33 Cal.3d 508, 189 Cal.Rptr. 377, 658 P.2d 740; *Rosenfeld, Meyer & Susman v. Cohen* (1983), 146 Cal.App.3d 200, 194 Cal. Rptr. 180; *Woodruff v. Bryant* (1977), Tex. App., 558 S.W.2d 535; *Lavin v. Ehrlich* (1974), Sup., 80 Misc.2d 247, 363 N.Y.S.2d 50; *Fouchek v. Janicek* (1950), 190 Or. 251, 225 P.2d 783; 59A Am.Jur.2d *Partnership* § 433 (1987). From dissolution to final termination the partners need be like Ceasar's third wife, Calpurnia, above reproach.

That there is a fiduciary role of the partners is borne out by the cases (no case directly on point in Indiana). In *Leff, supra,* the parties had formed a partnership to bid on a government construction project. One of the partners withdrew from the partnership and submitted an independent bid on the project, and was awarded the project several months later. The trial court determined the withdrawing partner had breached the fiduciary duty owed to the partnership. In affirming the trial court's decision, the supreme court of California elaborated on the continuing fi-

duciary duty of a withdrawing partner, concluding the withdrawing partner could not compete with the partnership without the former partner's consent. *Leff, supra.*

The court in *Cohen* went further and defined one of the fiduciary duties that survives the dissolution of the partnership is the duty not to take any action with respect to the unfinished business of the partnership which leads purely to personal gain of a partner. *Cohen, supra.*

In *Lavin, supra,* the partners had agreed to dissolve the partnership, but had not yet determined which partner would continue the business at the current location. When one of the partners purchased the building in which the business was located, the court imposed a constructive trust on the property for the partnership.

It is true there appear to be some cases that terminate a partner's fiduciary duty at the time dissolution first takes place, but a close examination of these decisions reveals that they can properly be characterized as allowing a partner to compete for *new* business upon dissolution, but such holdings cannot reasonably be extended to the unfinished business of the partnership pending at the time of dissolution. *See Matter of Silverberg* (1981), 81 A.D.2d 640, 438 N.Y.Supp.2d 143; *Bayer v. Bayer* (1926), 215 A.D. 454, 214 N.Y.S. 322.

In *Silverberg,* the court determined a former partner who solicited the future business of former clients of the partnership, after the partnership dissolution, had breached no fiduciary duty to the partnership. The court in *Bayer* determined that the fiduciary relationship of partners may end even before the dissolution of a partnership if all the partners have notice of the impending dissolution and thereafter deal with each other at arms length.

The fiduciary duty not to take action with respect to unfinished partnership business is deeply rooted in the Uniform Partnership Act. The partnership does not terminate upon dissolution, but continues during the winding up of partnership affairs and the liquidation of the partnership's assets. IC 23–4–1–30.

Holding partners to a strict fiduciary duty with respect to partnership business is not new. Long before the Uniform Partnership Act was adopted in Indiana, our supreme court decided *Thomas v. Hollingsworth* (1914), 181 Ind. 411, 103 N.E. 840. There, a partnership had been formed to find a buyer for real estate owned by a third party. The partnership had purchased an option on the property and sought a purchaser. After the option had expired, the property was purchased by one of the individuals the partnership had contacted. The owner then paid one of the partners an agreed commission on the sale. The other partners sued for an accounting of the partnership. The supreme court determined that the fact the option had expired did not control because the option was not the essence of the partnership agreement. As the property was sold through the efforts of the partnership, the partnership was due the commission. *Thomas, supra.*

In a like manner, the opportunity to purchase the Clouse property was a *partnership opportunity.* The fact the proposition had expired does not necessarily mean the opportunity no longer existed, as Clouse testified he would have sold the property to the partnership. Boushehry could not avail himself of this opportunity, if the fiduciary duty he owed the partnership remained intact.

Because Boushehry's fiduciary duty might have been extinguished by agreement of the parties, *see Bayer, supra,* the trial court's factual findings are insufficient to establish whether Boushehry breached his fiduciary duty. Therefore, the judgment is reversed because the award of *quantum meruit* was improper and because the trial court failed to consider applicable partnership law. Judgment reversed and remanded for further proceedings consistent herewith.

SHIELDS, P.J., and GARRARD, J., concur.